PONSOR, District Judge.
 

 I.
 
 INTRODUCTION
 

 In this products liability action plaintiffs are members of an as yet uncertified class of workers (or spouses and children of workers) which alleges that defendants General Electric Company (“GE”) and Monsanto Company (“Monsanto”) are responsible for the inju
 
 *94
 
 ríes sustained by them as a result of contact with poly-chlorinated byphenyls (“PCBs”) and other carcinogens during their employment at a GE plant in Pittsfield, Massachusetts.
 

 The current named plaintiffs are Albert T. Hopper, a former employee of GE, and Marie Elena Blair, the daughter of a former GE employee. Hopper claims injury based on his skin cancer. Ms. Blair asserts two loss of consortium claims against GE and Monsanto — one in her individual capacity and the other as executrix of the Estate of Rosemary Sarocco
 
 [1]
 
 — arising from the severe depression, cancer and death of her father, Phillip Sarocco.
 

 Before the court are defendants’ motions for summary judgment and Monsanto’s motion to strike. The motions are directed at all claims (except Phillip Saroeeo’s wrongful death claim against Monsanto) on the ground that they are barred by the three-year statute of limitations.
 

 Phillip Sarocco, it is admitted, began suffering from depression in 1973 and was diagnosed with bladder cancer in 1986. Hopper was diagnosed with skin cancer in the 1970’s and took a blood test in 1985 that confirmed the existence of PCBs in his system. This suit was not filed until June of 1994.
 

 For the reasons set forth below, the defendants’ motions for summary judgment will be allowed. Monsanto’s motion to strike certain portions of the plaintiffs’ opposition will be rendered moot by this ruling.
 

 II.
 
 FACTUAL BACKGROUND
 

 In weighing defendants’ motions, the court must view the facts in the light most favorable to the plaintiffs. The material facts are essentially undisputed and are as follows.
 

 From 1932 to 1977, GE manufactured Pyranol, a product made from PCBs. Monsanto was the sole manufacturer of PCBs in the United States from about 1934 to 1977. While defendants deny it, a reasonable jury could find that PCBs are highly toxic ehemical compounds linked to skin cancer, liver damage and cancer, brain cancer, intestinal cancer, leukemia and birth defects in humans and animals. Humans absorb these chemicals through skin contact, inhalation or ingestion.
 

 Plaintiff Marie Elena Blair is the daughter of Phillip Sarocco, a former worker who was exposed to PCBs during the course of his employment at the GE plant. Sarocco worked at the plant from 1963 to 1986, when he retired. He worked in the transformer section of the plant where he was responsible for repairing used transformers that were returned by customers. The process of repairing the transformers caused him to come into extensive skin contact with Pyranol and to inhale its fumes. The complaint alleges that as a result of his exposure to PCBs, Sarocco suffered severe depression beginning in 1973 and was diagnosed with bladder cancer in 1986. He died of cancer in 1993.
 

 Albert Hopper worked as an electrician at the plant. His crew was responsible for installing and maintaining the plant’s electrical system. He suffered direct skin contact and inhalation of Pyranol while working in areas where the product was manufactured. Hopper alleges that he is now suffering from skin cancer as a result of this exposure.
 

 As noted above, Hopper first became aware that he suffered from skin cancer in the 1970’s. It is undisputed that in 1985 Hopper suspected that his cancer was caused by exposure to PCBs and that, because of this suspicion, he underwent tests to see if he had PCBs in his system. He was informed that these tests were positive for PCBs.
 

 Since 1971 local newspapers in the area around the GE plant have contained scores of articles suggesting a link between PCBs and cancer. Co-workers of both Phillip Sarocco and Albert Hopper were aware of the possible link, as was their union. Neither Phillip Sarocco nor his wife Rosemary made any comment before their deaths to the effect that they believed, or did not believe,
 
 *95
 
 that Phillip’s depression and cancer were caused by exposure to PCBs at the GE plant. Even in the last months of his life, Phillip’s conversations with his son contained no reference to any cause of his illness. Neither the Saroceos nor their daughter Marie was ever directly told anything by any employee of either defendant that might be reasonably construed by any factfinder as an attempt to persuade them that PCBs were
 
 not
 
 the cause of Phillip’s injuries. In other words, GE and Monsanto made no effort towards the Saroccos specifically to conceal any link between PCBs and Phillip’s illness.
 

 It
 
 is
 
 undisputed, however, that since the 1970’s GE has issued numerous general statements and press releases denying or minimizing the link between PCBs and cancer. GE commissioned a lengthy study which, in its view, provided evidence of the lack of any connection. To this day, specifically in the context of this litigation and despite considerable contrary opinion, GE does not concede any causal relationship between PCB exposure and the illnesses suffered by Hopper and Phillip Sarocco. The record contains no evidence, however, that Phillip or Rosemary Sarocco, or their daughter Marie, ever relied upon, or was even aware of, GE’s public denials in the years prior to filing this suit.
 

 III.
 
 SUMMARY JUDGMENT STANDARD
 

 Summary Judgment is appropriate “where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c);
 
 Goldman v. First Nat’l. Bank,
 
 985 F.2d 1113, 1116 (1st Cir.1993). Moreover, summary judgment is mandated “after adequate time for discovery and upon a motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and upon which that party will bear the burden of proof at trial.”
 
 Celotex v. Catrett, 477
 
 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1985). In order to defeat a motion for summary judgment, the non-movant must come forward with enough evidence to “establish at least a genuine issue of material fact on every element essential to his [her] case in chief.”
 
 Vega v. Kodak Caribbean, Ltd.,
 
 3 F.3d 476, 479 (1st Cir.1993), quoting
 
 Mesnick v. General Electric Co.,
 
 950 F.2d 816, 825 (1st Cir.1991),
 
 cert. denied,
 
 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). That evidence must be “definite, competent evidence.”
 
 Vega,
 
 3 F.3d at 479, quoting
 
 Mesnick,
 
 950 F.2d at 822. “Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice.”
 
 Vega,
 
 at 479.
 

 It is central to the issue raised by defendants’ motions that the burden upon a non-moving party where the summary judgment motion is based upon the statute of limitations is no different. As defendants point out, ordinarily torts accrue at the time of injury. In a typical case, therefore, since this case was filed in June of 1994, defendants would be entitled to summary judgment if the undisputed facts revealed that the plaintiffs’ injuries occurred before June of 1991. Moreover, a litigant cannot bootstrap the statute of limitations with a consortium claim. As the First Circuit has pointed out, “loss of consortium claims that do not accrue until after the statute of limitations has run on the underlying claim may not be enforced.”
 
 Lareau v. Page,
 
 39 F.3d 384, 391 (1st Cir.1994). Thus, when a defendant files a motion contending that a plaintiffs claims are time-barred (as here), it is the
 
 plaintiff
 
 who then bears the burden of pointing to specific facts of record that would justify a factfinder in concluding that the suit is timely-
 

 This same responsibility continues to rest upon a plaintiffs shoulders in a case where (as here) he or she attempts to avoid the strict application of a statute of limitations by invoking the “discovery rule.” This escape hatch from the normal deadline applies where an action is based on an inherently unknowable wrong; it is frequently invoked in cases involving insidious occupational diseases. Under the discovery rule the door would not close on this lawsuit until three years following the date on which the plaintiff had (1) knowledge or sufficient no
 
 *96
 
 tice of the harm and (2) knowledge or sufficient notice of the
 
 cause
 
 of the harm.
 
 Bowen v. Eli Lilly & Co., Inc.,
 
 408 Mass. 204, 208, 557 N.E.2d 739 (1990).
 
 See also Lareau v. Page,
 
 39 F.3d 384, 388 (1st Cir.1994);
 
 Fidler v. Eastman Kodak Co.,
 
 714 F.2d 192, 198 (1st Cir.1983).
 

 A plaintiff cannot make use of the discovery rule, however, by putting his or her head in the sand. In other words, a party cannot close its eyes to easily discernible facts. Where the discovery rule is asserted, the appropriate standard to be applied when assessing knowledge or notice is that of a “reasonable person in the plaintiffs position.”
 
 Riley v. Presnell,
 
 409 Mass. 239, 245, 565 N.E.2d 780 (1991). To oppose a motion for summary judgment successfully, therefore, the plaintiff must point to evidence sufficient to convince a factfinder that a person in plaintiffs position would
 
 not reasonably
 
 have known or been put on notice of the existence of the injury and the cause of the injury, until less than three years prior to filing the lawsuit. “[EJven with the adoption of the discovery rule, the plaintiff bears the burden of proving facts taking his case outside the impact of the three-year statute of limitations.”
 
 Franklin v. Albert,
 
 381 Mass. 611, 619, 411 N.E.2d 458 (1980).
 

 IV.
 
 DISCUSSION
 

 The plaintiffs argue that courts grant summary judgment in the face of an assertion of the discovery rule only in two situations: (1) when the plaintiff actually
 
 admits
 
 that he or she had a belief as to the probable cause of the injury more than three years before the suit was filed or (2) where the plaintiff was actually
 
 told
 
 by a doctor of the probable cause of the injury more than three years before the suit was filed. Since neither of the two situations exists here, plaintiffs contend that defendant’s motion should be denied.
 

 While of course numerous cases turn on facts of that sort, this viewpoint is far too narrow. To repeat, the issue is whether sufficient evidence exists in the record now before the court to convince a factfinder that a reasonable person in plaintiffs position would only have had knowledge or notice of the existence of the harm and the cause of the harm after June of 1991.
 

 In fact, the issue is even narrower, because it cannot be disputed that both Hopper and the Saroccos knew of the
 
 fact
 
 of their injuries more than a decade earlier. The only issue is the sufficiency of evidence to demonstrate ignorance of
 
 cause.
 

 1.
 
 THE CLAIMS OF THE ESTATES OF PHILLIP SAROCCO AND ROSEMARY SAROCCO
 

 As noted, the claims of both Phillip and Rosemary Sarocco are being presented by their daughter Marie Elena Blair. The only evidence Ms. Blair has offered regarding the discovery rule is (1) that her parents did not subscribe to a newspaper, (2) that Phillip Sarocco and Rosemary Sarocco were silent with respect to knowledge of his injuries and to their possible cause, and (3) that Phillip’s son believes that if his father
 
 had
 
 been aware of the connection between his illness and his employment, he
 
 would
 
 have said something about it.
 

 This scant evidence — or, more accurately, evidence inferred from an absence of evidence — is simply insufficient to satisfy the burden upon the plaintiffs at summary judgment. It cannot be disputed that Phillip Sarocco was ill, and knew he was Dl, for a very long time. Moreover, it cannot be disputed that he lived during these many years in an environment that seethed with opinion, discussion and controversy about the effects of PCBs. The information openly available for more than a decade would have permitted any reasonable person to know the possible cause of his injury and put that person on notice to investigate.
 

 In the face of all this evidence, marshalled in detail in defendants’ submissions, the plaintiff cannot merely point to the lack of any affirmative evidence that the decedent
 
 did
 
 know the cause of his injury to invoke the discovery rule. The goal of statutes of limitation is to put controversy to rest after a reasonable time. That object would be entirely frustrated if the limitation term could be tossed aside so easily.
 

 
 *97
 
 In reaching this conclusion the court is not placing an impossible burden upon plaintiffs attempting to employ the discovery rule in a piece of toxic tort litigation. All that is required is that a plaintiff point to a sufficient quantum of evidence to generate a factual dispute about this question: would a reasonable person in plaintiffs position have known of the existence of the injury and its cause? On this record plaintiff cannot adduce sufficient facts to justify any reasonable factfinder in answering “no.”
 

 To put it differently, where a defendant in the summary judgment context points to a mass of evidence that suggests that a reasonable person
 
 would
 
 have known of the existence and cause of his injury, a plaintiff cannot fold his arms and respond that, despite all this, the decedent
 
 might
 
 not have known, and therefore the issue is for the jury. Many circumstances can easily be imagined where a plaintiff could assemble facts adequate to satisfy his burden under Rule 56: for example, where the period of illness was so short there was little time to investigate, where information about its cause did not exist or was not readily accessible, or where the decedent affirmatively expressed or demonstrated his inability to discern the existence or cause of his malady.
 

 In sum, however, plaintiff in
 
 this
 
 case does not have enough facts to invoke the discovery rule properly.
 

 2.
 
 THE CLAIMS OF MARIE ELENA BLAIR
 

 Despite the numerous articles that appeared reporting the scientific controversy, Blair testified in her deposition that she had no idea what caused her father’s illness. She noted that she did not subscribe to the local newspaper. Interpreting the facts and drawing all reasonable inferences in plaintiffs favor, this court must again conclude that the level of public awareness within the community as demonstrated by the ongoing public debate over the link between PCBs and cancer in humans is sufficient to put a reasonable person in the plaintiffs position on notice. Marie Blair had sufficient reasonable notice of the likely cause of her father’s injury, so as to give rise to a duty to investigate whether she had a viable legal claim. In addition, and perhaps more importantly, the fact that her parents’ claims would be time barred is fatal to her claim, even if she reasonably could
 
 not
 
 have known of the injury and its cause, under the ruling in
 
 Lareau.
 

 3.
 
 THE CLAIMS OF ALBERT HOPPER
 

 With respect to Albert Hopper’s claim, defendants argue that he knew the cause of his injury as early as 1985. Hopper admitted in his deposition that he actually suspected PCBs were causing his skin cancer even before he underwent the tests that found them in his bloodstream. This admission alone is enough for a court to grant summary judgment as a matter of law. Hopper Dep.Yol. II at pp. 89 and 102. Hopper’s original belief coupled with the test results was sufficient under the circumstances to give rise to the duty to investigate the viability of a legal claim against the defendants. Accordingly the statute began to run, at the latest, in 1985. He did not file suit until nine years later.
 

 Plaintiffs have attempted to escape the statute of limitations, and avoid the consequences of their inability to offer facts to support the application of the discovery rule, by asserting that defendants fraudulently concealed the existence of their claims. Under Massachusetts law when a corporation fraudulently conceals a cause of action, the period of concealment is excluded from the limitation calculus. Mass.Gen.L. ch. 260, § 12. Here, the undisputed facts fail to support any such claim as a matter of law. The defendants’ general, repeated public denial of any link between PCBs and cancer does not constitute fraudulent concealment as a matter of law. A defendant is not obliged to acknowledge liability, or to adopt a plaintiffs theory of a case, in order to avoid a defense of this sort. For over sixty years the Commonwealth of Massachusetts has required “positive acts done with the intention to deceive the plaintiff’
 
 Connelly v. Bartlett,
 
 286 Mass. 311, 318-319, 190 N.E. 799 (1934) (citations omitted).
 
 See also, Tagliente v. Himmer,
 
 949 F.2d 1, 5 (1st Cir.1991). No specific
 
 *98
 
 acts directed at the plaintiffs have been cited as evidence of fraud. Moreover, the only pertinent evidence on this point is to the effect that the plaintiffs neither heard of nor relied upon G.E.’s general public denials. To conclude under these circumstances that the defendants were guilty of fraudulent concealment would require this court to ignore well established authority and eviscerate the statute of limitations.
 

 V.
 
 CONCLUSION
 

 It is never a happy act to dismiss a case without permitting a plaintiff to offer evidence at trial, especially where the injuries are so severe and so tragic, as they are here. But it would be false compassion to permit these claims to go forward. On these facts, the statute of limitations issue is not even a particularly close call. Much of the evidence set out by the defendants has not been cited in this memorandum for reasons of conciseness. It is sufficient to say that no reasonable factfinder could avoid the conclusion that plaintiffs reasonably knew, or were on sufficient notice, prior to June of 1991 of both the injuries and their cause. To give false hope to the plaintiffs and perhaps encourage the further expense and trauma of litigation in these circumstances would not be fair to anyone.
 

 For these reasons the motions for summary judgment are hereby allowed. The motion to strike is denied as moot. The clerk will set the matter down for a status conference with regard to the remaining claim against the defendant Monsanto for the wrongful death of Phillip Sarocco.
 

 [1]
 

 . Rosemary Sarocco, the widow and administratrix of the Estate of Phillip Sarocco filed the original suit against defendants on behalf of her late husband's estate and in her own capacity for loss of consortium. Mrs. Sarocco died after commencement of this action, but before the filing of the amended complaint.