134 Cal.Rptr.2d 304 (2003)
109 Cal.App.4th 24
LOCKHEED MARTIN CORPORATION, Petitioner,
v.
The SUPERIOR COURT of the County of San Bernardino, Respondent;
Karen Adams et al., Real Parties in Interest.
No. E031381.
Court of Appeal, Fourth District, Division Two.
April 30, 2003.
Review Granted July 16, 2003.
Holme Roberts & Owen and Linnea Brown, Denver, CO; Gibson, Dunn & Crutcher, Robert S. Warren, Robert W. Loewen, Irvine, and David A. Battaglia, Los Angeles, for Petitioner.
No appearance for Respondent.
Engstrom, Lipscomb & Lack, Walter J. Lack, Elizabeth L. Crooke, Gary A. Praglin, Richard P. Kinnan; Girardi & Keese, Thomas V. Girardi, Los Angeles, and Howard B. Miller, El Segundo, for Real Parties in Interest.

OPINION
HOLLENHORST, Acting P.J.
In this matter we are required to analyze and apply the delayed discovery rule *305 in a toxic contamination case to determine whether the statute of limitations bars the personal injury and wrongful death claims of 28 plaintiffs and the claims of eight other plaintiffs brought pursuant to Proposition 65.[1] We conclude that the trial court did not correctly apply the rule to the facts and consequently erred in denying defendant Lockheed Martin Corporation's (Lockheed) motion for summary judgment/adjudication with respect to the 28 personal injury plaintiffs. With respect to the Proposition 65 claims, we seriously question whether Lockheed can be held liable when it is undisputed that it ceased operations in the area in 1974. However, Lockheed seeks reversal solely on the ground that the delayed discovery rule can never be applied to causes of action brought pursuant to Proposition 65. We are not prepared to so hold, and believe that its contentions are properly considered in determining the retroactive scope of Proposition 65. Accordingly, we grant Lockheed's petition for writ of mandate in part.

FACTUAL AND PROCEDURAL BACKGROUND
This petition arises from claims made by nearly 800 persons for personal injuries as a result of exposure to toxic contaminants in the Redlands water supply. Petitioner Lockheed, alleged to have been one of the polluters when it operated a plant in Mentone from 1955 to 1974, is a defendant in a series of related actions brought between February 25, 1997, and February 25, 1999, that have been consolidated for pretrial purposes under the caption In re Redlands Tort Litigation. The causes of action at issue are for negligence, wrongful death, strict liability for ultrahazardous activity, and violation of Proposition 65.[2]
The parties have been litigating the claims of approximately 48 test plaintiffs pursuant to a case management order. The trial court refers to these test plaintiffs as the First Tier Plaintiffs or FTP's. Lockheed moved for summary judgment and/or adjudication with respect to 44 of the FTP's on the ground that all their causes of action were barred by the applicable one-year statute of limitations, given that its alleged wrongful conduct occurred more than 20 years before, and that each plaintiff suffered appreciable harm more than one year prior to filing suit. Although Lockheed conceded that the delayed discovery exception applied in principle to the personal injury claims, it contended that due to the widespread publicity concerning water contamination in Redlands, a reasonable person would have suspected a link between the contamination and their injuries more than a *306 year before filing suit. Lockheed contended that the delayed discovery exception is not applicable to claims under Proposition 65.
The trial court concluded that the delayed discovery rule applied to the Proposition 65 claims as well as to the other causes of action. The trial court found that Lockheed had met its initial burden by showing that all of the 44 FTP's causes of action had accrued prior to one year before their complaints were filed, so that in order to save their claims the plaintiffs were required to show that the delayed discovery rule applied.
In order to determine whether a triable issue of fact existed with regard to the application of the discovery rule, the trial court assessed the effect of widespread publicity about contamination of the Redlands groundwater. The publicity included over 100 articles in local newspapers, public notices and fact sheets, and public meetings. The trial court divided the publicity into two categories. The first series of articles, television programs, and radio segments from September 1980 through May 1997 discussed the contamination of the groundwater, and the second series of articles and paid advertisements published from June 1996 to March 23, 1997, discussed the various lawsuits and injuries allegedly sustained from the contamination. The court found that in the first series of articles the media was preoccupied with contamination only, not whether this contamination caused personal injuries or death. "In the first series of articles, the information given at most would have alerted the Plaintiffs to the fact that the groundwater was contaminated with [trichloroethylene (TCE)], a weak carcinogen that would only produce health hazards if the Plaintiffs were exposed to the contaminant over a 70-year period. In addition, the first series of articles stressed that the contaminated water was not being delivered to the citizens of Redlands."
In the trial court's view, the second series of articles and paid advertisements discussed injuries sustained from contamination. "The articles primarily discuss the lawsuits that were filed and the basis for those lawsuits. The articles contained specific information regarding contaminated water causing personal injuries. These articles often appeared as headline news stories and appeared on the front pages of the newspaper. [¶] Therefore these articles contain sufficient information and are sufficiently notorious to meet that test criteria for imputing knowledge." The court imputed knowledge of these articles to FTP's who testified that they read or subscribed to the Redlands Daily Facts, Press-Enterprise, or San Bernardino Sun from December 13, 1996, through February 27, 1997. Accordingly, the trial court granted summary judgment as to eight test plaintiffs who filed their actions more than one year after the articles appeared in the newspaper to which they subscribed or read.
Although the trial court found that the notice of contamination should be imputed to all citizens of Redlands based on the first series of articles, it refused to impute knowledge that the contamination might cause injuries based on these articles. Therefore, it denied summary adjudication of the personal injury and wrongful death claims of 28 plaintiffs who regularly read and subscribed to the newspapers during the 17-year period when the first series of articles were published.
As to the Proposition 65 claims, the court found, as mentioned above, that the newspaper articles and television and radio segments from the first series of publicity was pervasive and notorious regarding disposal of toxins onto the land and the subsequent contamination of the groundwater. *307 Accordingly, it found that notice of the contamination should be imputed to all citizens of Redlands unless they were able to show how they failed to learn of it. The trial court granted summary adjudication against all but eight FTP's on the Proposition 65 claims. Those eight were either minors in the 1980's or persons who had not lived in the area during the time of most or all of the publicity, and the trial court found that they had raised a triable issue on delayed discovery of the Proposition 65 claims.

DISCUSSION

A. The Delayed Discovery Rule

The common law rule is that a statute of limitations begins to run upon the occurrence of the last element essential to the cause of action, even if the plaintiff is unaware of his cause of action. The harshness of this rule has been ameliorated by application of the discovery rule in cases where it would be manifestly unjust to deprive a plaintiff of a cause of action before he is aware he has been injured. (Mangini v. Aerojet-General Corp. (1991) 230 Cal.App.3d 1125, 1149-1150, 281 Cal. Rptr. 827.) Thus, the discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of his injury and its negligent cause. "The plaintiff is charged with this awareness as of the date he suspects or should suspect that his injury was caused by wrongdoing, that someone has done something wrong to him. Accordingly, the period of limitations will begin to run without regard to whether the plaintiff is aware of the specific facts necessary to establish his claim, provided that he has a `suspicion of wrongdoing,' which he is charged with once he has `notice or information of circumstances to put a reasonable person on inquiry.' (Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1109-1111, 245 Cal.Rptr. 658, 751 P.2d 923.)" (McKelvey v. Boeing North American, Inc. (1999) 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645.)
A plaintiff whose claims would be barred without the benefit of the discovery rule must specifically plead and prove facts to show (1) the time and manner of discovery, and (2) the inability to have made earlier discovery despite reasonable diligence. (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79.)
We must first consider whether to apply our state's formulation of the delayed discovery rule in light of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (42 U.S.C. § 9601 et seq.). CERCLA provides that "[i]n the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute." (42 U.S.C. § 9658(a)(1).) It does not create a federal statute of limitations nor does it alter the length of a state statute of limitations, but it does require that the limitations period begin to run no earlier than the date on which the plaintiff discovers, or should have discovered, the injury and its cause. Where a state applies the discovery rule such that the statute of limitations commences on the same date under both state law and CERCLA, there is no federal preemption. (Angeles Chemical Co. v. Spencer & Jones (1996) 44 Cal.App.4th 112, 123, 125, 51 Cal.Rptr.2d 594.)
*308 Based on the plain language of this section, CERCLA applies to state law claims for damages caused by the release of hazardous substances, even in the absence of an underlying CERCLA claim. (O'Connor v. Boeing North American, Inc. (9th Cir. 2002) 311 F.3d 1139, 1149 (O'Connor); see also Angeles Chemical Co. v. Spencer & Jones, supra, 44 Cal.App.4th 112, 51 Cal. Rptr.2d 594 [applying 42 U.S.C. § 9658 to a complaint alleging only causes of action under state law].)
Title 42 United States Code section 9658 defines the "[f]ederally required commencement date" for state limitations periods as "the date the plaintiff knew (or reasonably should have known) that the personal injury ... [was] caused or contributed to by the hazardous substance or pollutant or contaminant concerned." (42 U.S.C. § 9658(b)(4)(A).) Thus, the federal and California discovery rules appear to be the same. However, in the recent decision of O'Connor, supra, 311 F.3d 1139, a panel of the Ninth Circuit concluded that CERCLA preempted, because under California discovery rules the statute of limitations would start earlier. The majority in O'Connor concluded that California courts have formulated a standard for determining when a plaintiff is on inquiry notice that is fundamentally distinct from the federal standard set forth in title 42 United States Code section 9658. The discovery rule as applied by California courts provides that the "plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof...." (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 397, 87 Cal.Rptr.2d 453, 981 P.2d 79.) The O'Connor majority opined that title 42 United States Code section 9658 sets a later date for filing complaints because the federal discovery rule requires more than a mere suspicion of a claim. (O'Connor, supra, 311 F.3d at p. 1148.)
We believe that the O'Connor majority has not correctly interpreted the California discovery in comparison with the federal discovery rule. We believe, as the dissent in O'Connor did, that the standards are substantially the same.
Contrary to the O'Connor majority's suggestion, California law does not provide that the period of limitations begins to run merely on a vague suspicion of wrongdoing, but only when a plaintiff has notice or information of circumstances to put a reasonable person on inquiry. "Reasonably should have known" is in practical effect not a different standard than "reasonably should have suspected." Under either standard, a prospective plaintiff may not sit on his or her rights until the acquisition or possible acquisition of sufficient evidence to succeed on the claim. (Jolly v. Eli Lilly & Co., supra, 44 Cal.3d at p. 1111, 245 Cal.Rptr. 658, 751 P.2d 923.) Constructive knowledge is also imputed to plaintiffs under the federal standard, and many courts in the federal system have applied the discovery rule in a variety of contexts using reasonable suspicion language.[3] We note, for example, that in actions under the Federal Tort Claims Act the accrual of a cause of action may be postponed in certain circumstances until the plaintiff has, or with reasonable diligence should have, discovered the critical facts of both his injury and its cause. Federal courts have applied this postponed accrual rule in a manner similar to the California discovery rule. "Discovery of the `critical facts' of injury and causation is *309 not an exacting requirement, but requires only knowledge of, or `knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it.... [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice.' [Citations.] A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, [citations], but such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence, [citation]." (Kronisch v. U.S. (2d Cir.1998) 150 F.3d 112,121.)
We are not persuaded by the majority's assertion in O'Connor that "[s]everal federal courts have distinguished the federal knowledge standard from a standard that commences a limitations period when a plaintiff merely suspects the cause of injury, reasoning that the federal standard requires more than suspicion alone." (O'Connor, supra, 311 F.3d at p. 1148.) The cited cases interpreted the discovery rule from other states and concluded merely that under the facts of that particular case a triable issue of fact had been raised whether the plaintiff knew or should have known of the injury and its cause. (Ballew v. A.H. Robins Co. (11th Cir.1982) 688 F.2d 1325; Evenson v. Osmose Wood Preserving Co. of America (7th Cir. 1990) 899 F.2d 701; Maughan v. SW Servicing, Inc. (10th Cir.1985) 758 F.2d 1381.) None of the cases contained a comparison of the state's discovery rule with a federal standard.
Thus, because we are not bound by the decisions of the lower federal courts even on federal questions (People v. Crittenden (1994) 9 Cal.4th 83, 120, fn. 3, 36 Cal. Rptr.2d 474, 885 P.2d 887), we will apply California authority based on our conclusion that CERCLA does not preempt our rule in that both standards are substantially similar.

B. The Personal Injury Claims

We now turn to the substance of the trial court's ruling denying Lockheed's motion for summary adjudication of the personal injury claims of 28 FTP's. We review the trial court's order independently. (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 404, 87 Cal.Rptr.2d 453, 981 P.2d 79.)
Although the trial court found that 28 FTP's had notice of the contaminated groundwater as a result of the widespread and pervasive publicity, it denied summary adjudication of their personal injury claims on the ground that they lacked sufficient information to place them on inquiry notice to trigger the statute of limitations. Lockheed contends that the trial court did not correctly apply discovery rules to the undisputed facts. We agree.
There is no dispute that there was extensive media publicity beginning in 1980 to 1996 about the contamination of the groundwater in Redlands. The issue in this case is whether that publicity placed a reasonable person who suffered injury on inquiry notice to trigger the statute of limitations. The resolution of this issue requires us to apply the law to these uncontested facts, thus it is a proper subject for summary judgment. "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (Jolly v. Eli Lilly & Co., supra, 44 Cal.3d *310 at p. 1112, 245 Cal.Rptr. 658, 751 P.2d 923.)
The trial court noted that for years the local newspapers were preoccupied with the contamination of the land and groundwater. Based on the pervasive and widespread publicity in the first series of publicity, the trial court imputed notice to all citizens of Redlands that the groundwater had been contaminated with toxins unless they showed how they failed to learn of the contamination. Eight of the FTP's, either minors or those who had not lived in the area during the period of most or all of the publicity, were successful in making this showing but 28 were not. As a result, the trial court concluded that the Proposition 65 claims of these 28 FTP's were barred. We believe that the trial court properly placed the burden on plaintiffs to show how they failed to learn of contamination in light of the pervasive publicity. Constructive knowledge may be imputed to plaintiffs based on extensive and widespread publicity if a reasonable person would have discovered that information. (See, e.g., United Klans of America v. McGovern (5th Cir.1980) 621 F.2d 152; In re Burbank Environmental Litigation (C.D.Cal.1998) 42 F.Supp.2d 976; Stutz Motor Car of America v. Reebok Intern., Ltd. (C.D.Cal.1995) 909 F.Supp. 1353; cf. McKelvey v. Boeing North American, Inc., supra, 74 Cal.App.4th 151, 161, 86 Cal. Rptr.2d 645.)
Given the trial court's finding, the only reasonable deduction is that the 28 FTP's had reason to suspect that they may have been exposed to carcinogens or other disease-causing toxins in the groundwater. The trial court concluded, however, that such notice was not sufficient to spark the requisite suspicion, because the first series of articles did not specifically link potential injuries to the contamination. We believe that the trial court erred when it found that notice of the toxic contamination was not sufficient to place a reasonable person on inquiry notice of his or her personal injury claims.
First, it seems illogical to find that the 28 FTP's had sufficient knowledge to put them on notice of their Proposition 65 claims, which are predicated on the discharge of cancer-causing chemicals into the water or land "where such chemical passes or probably will pass into any source of drinking water,"[4] but find that this same knowledge was insufficient to put them on inquiry notice of personal injury claims. No further information regarding a causal link between possible exposure to a cancer or other disease-causing agents and personal injuries is necessary to trigger inquiry notice. "A plaintiff need not be aware of the specific `facts' necessary to establish the claim; that is a process contemplated by pretrial discovery." (Jolly v. Eli Lilly & Co., supra, 44 Cal.3d at p. 1111, 245 Cal.Rptr. 658, 751 P.2d 923.)
Plaintiffs were required to plead and prove the facts of discovery, the manner of discovery, and circumstances excusing the failure to have made the discovery earlier. In response to the trial court's order following a demurrer, each of the 28 FTP's alleged that what aroused their suspicions prompting them to take action occurred when they learned that they may have been exposed to a toxic contaminantnot when they learned of actual exposure, not when the public reassurances had been dispelled, and not when they were told *311 that their injuries were caused by the contaminated groundwater. The plaintiffs are required to identify the information they discovered that caused them to bring suit so that the court may clearly see whether, by the exercise of ordinary diligence, the discovery might not have been made earlier. (Pocahontas Supreme Coal Co. v. Bethlehem Steel (4th Cir.1987) 828 F.2d 211, 219; see also O'Connor, supra, 311 F.3d 1139.) Thus, the time when these plaintiffs were on notice of the contamination is crucial in light of their allegations. The 28 FTP's had notice of the contamination of the groundwater as a result of the first series of articles, and they failed to explain how they failed to learn of the possible exposure earlier when the same information was available outside the period of limitations. The trial court's finding that the 28 FTP's were not on inquiry notice, because the first series of publicity did not link the injuries to the contamination, is inconsistent with the plaintiffs' own pleading of late discovery.
Moreover, the very nature and extent of the media reports and public notices of widespread contamination of the groundwater with toxic chemicals was sufficient to indicate a causal link. The presence of toxic contaminants in the groundwater prompted a plethora of news articles and public notices on the subject precisely because it created a significant public health concern. We believe that the massive publicity created a basis for reasonable suspicion that was not dispelled simply because the publicity also contained reassurance by government officials about the low level of risk and that contaminated water was not currently[5] being delivered to Redlands's residents. (See Mangini v. Aerojet-General Corp., supra, 230 Cal. App.3d at p. 1153, 281 Cal.Rptr. 827 ["That defendant gave evasive, or even untruthful, reasons for the inspection did not relieve plaintiffs of their duty of inquiry once they had sufficient facts to suspect the cause of action."]; Estate of Sarocco v. General Elec. Co. (D.Mass.1996) 939 F.Supp. 91, 97 ["Interpreting the facts and drawing all reasonable inferences in plaintiffs favor, this court must again conclude that the level of public awareness within the community as demonstrated by the ongoing public debate over the link between PCBs and cancer in humans is sufficient to put a reasonable person in the plaintiffs position on notice ... so as to give rise to a duty to investigate whether she had a viable legal claim."].)
Moreover, there is no substantial difference in the nature of the factual information provided in the first and second series of publicity. The second series of articles did not contain any new facts about the contamination, but, as the trial court even noted, merely the fact that lawsuits had been filed alleging that persons had suffered injuries as a result. We must agree with Lockheed's characterization that the second series of articles differed from the first only in that they contained lawyers' "spin" on the issue. "[I]t is the discovery of facts, not their legal significance, that starts the statute." (Jolly v. Eli Lilly & Co., supra, 44 Cal.3d at p. 1113, 245 Cal. Rptr. 658, 751 P.2d 923.)
It does not follow that the second series of publicity was necessary to spark a reasonable person's suspicions. This is demonstrated by the fact that over 100 persons allege that they learned the basis of their claims before the second series of articles *312 began on December 13, 1996. The trial court did not consider that the allegations of these 100 individuals necessarily proved that a reasonable person would be on inquiry notice. We disagree. The trial court and the plaintiffs have failed to recognize the significance of these allegations. The allegations of so many people clearly establish that the information was discoverable and raises only one reasonable inference that plaintiffs knew of, or with reasonable diligence could have discovered, the alleged basis for their lawsuits earlier. (Braunstein v. Laventhol & Horwath (S.D.N.Y.1977) 433 F.Supp. 1077, affd. without opn. (2d Cir.1977) 573 F.2d 1288.) Plaintiffs cannot tenably argue that the information available in the first series of publicity was insufficient to put a reasonable person on inquiry notice when over 100 people allege it was. When coupled with the other factors we have discussed, we conclude that as a matter of law the 28 FTP's had reason to suspect, prior to December 1996, that Lockheed's wrongdoing had caused their injuries. Thus, the trial court should have concluded that their personal injury causes of action were barred by the statute of limitations.

C. Proposition 65 Claims

Lockheed contends that the trial court erred in applying the delayed discovery rule to the Proposition 65 claims,[6] noting that the purpose of the initiative measure is primarily remedial and preventative in nature to enjoin the discharge of cancer-causing chemicals. Lockheed contends that to apply the delayed discovery rule leads to absurd results as it does here giving private parties the ability to sue for violations long after a defendant has ceased doing business in a given location. It asserts that this could not have been the intent of the voters as illustrated by the provision that it does not apply to the discharge or release of any chemical that takes place within 20 months after that chemical has been added to the list of chemicals published pursuant to Proposition 65. (Health & Saf.Code, § 25249.9.) Plaintiffs filed their claims more than 20 years after Lockheed's discharge of chemicals, more than 15 years after it ceased operations in Redlands, and more than 10 years after government agencies had already discovered the contamination. At these times, Proposition 65 had not yet been enacted, nor did TCE appear on the list of chemicals covered by Proposition 65. According to Lockheed, the purpose of the statute is not furthered by the application of the delayed discovery rule where no such discharge has occurred within one year of filing suit.
As the trial court and the FTP's point out, delayed discovery has been applied to statutory claims as well as to common law causes of action. The rule is properly applied where it is difficult or impossible for a plaintiff to immediately detect or comprehend the breach or resulting injuries. (Prudential Home Mortgage Co. v. Superior Court (1998) 66 Cal.App.4th 1236, 78 Cal.Rptr.2d 566.) It is therefore appropriate to apply it to Proposition 65 claims, because discharge of toxic chemicals will often not be immediately detectable.
Here, Lockheed stopped operations in 1974years before the passage of Proposition 65. Health and Safety Code section 25249.9, subdivision (a), provides that "Section 25249.5 [the basic prohibition against discharge of toxic chemicals] shall not apply to any discharge or release that takes place less than twenty months subsequent to the listing of the chemical in question on the list required to be published under *313 subdivision (a) of Section 25249.8." The listing of TCE or any chemical discharged by Lockheed did not take place until 1987. While we seriously question whether Lockheed is liable under Proposition 65, this issue is not before us. Lockheed seeks reversal of the denial of summary adjudication solely on the issue that the delayed discovery rule does not apply to Proposition 65 claims as a matter of law. Although we find Lockheed's argument compelling, we do not view it as raising an issue concerning the applicability of the delayed discovery rule, but rather whether Proposition 65 can even be retroactively applied to Lockheed's conduct.

DISPOSITION
Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to set aside its order denying petitioner's motion for summary judgment as to the personal injury claims of the 28 FTP's and to enter a new and different order granting the motion as to them. The petition is denied in all other respects. Each party to bear its own costs.
Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.
We concur: WARD and GAUT, JJ.
NOTES
[1] The 28 personal injury plaintiffs are: Karen Adams, Ruth Barnes, Karolyn Baucom, Ruth Brogan, Joseph Butler, Don Buyak, Mary Ann Finstad, Virginia Fister, Laurence Gallagher, Teresa Gibbons, Audrey Hayes, Ada Heemstra, Roseana Lemos, Sandra McIntosh, Sheryl Nelson, Terri Nielsen, Georgia Norwood, Karie Pearson, Connie Roque, Leo Roque, Hans H. Scheibe, Carl Smith, Clarence Smith, Jolene Smith, Sarah Wells, Robert Wells, Jr., Lisa Willis, and Adrienne Wise-Tates.

The trial court denied summary adjudication of the Proposition 65 causes of action of the following eight plaintiffs: Ashika Bradford, Mark Hughes, Leigh Hunt, Elizabeth Konogeris, Debbie Mach, Merry Nelson, Lekisha Reese, and Derek Schott.
[2] The trial court ruled that the one-year statute of limitations under Code of Civil Procedure section 340 former subdivision 3 applied to both the personal injury and strict liability claims and made no distinction between these causes of action and the wrongful death causes of action in applying the delayed discovery rule. Nor do the parties treat them differently in their arguments. Therefore, references in this opinion to the personal injury claims include the wrongful death and strict liability causes of action as well.
[3] See, e.g., Plaza Speedway v. U.S. (10th Cir. 2002) 311 F.3d 1262; Law v. Medco Research, Inc. (7th Cir. 1997) 113 F.3d 781; Maggio v. Gerard Freezer & Ice Co. (1st Cir. 1987) 824 F.2d 123; and Drazan v. United States (7th Cir. 1985) 762 F.2d 56.
[4] "No person in the course of doing business shall knowingly discharge or release a chemical known to the state to cause cancer or reproductive toxicity into water or onto or into land where such chemical passes or probably will pass into any source of drinking water,...." (Health & Saf.Code, § 25249.5.)
[5] The fact that wells were shut down after the city discovered the toxic contamination does not prove that residents never actually received contaminated water. To the contrary, a person could reasonably suspect, based on such information, that he or she may have been exposed to contaminated water.
[6] The parties agree that the trial court correctly found that the one-year statute of limitations for claims based on a statute applied to the Proposition 65 claims.